1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
2                    SOUTHERN DIVISION

3  UNITED STATES OF AMERICA,      )
                         )
4         Plaintiff,       )
                         )Case Number: 8:19-cr-0121-PJM
5         vs.              )
                         )
6  RICARDO CARTER, II,         )
                         )
7         Defendant.       )

8         TRANSCRIPT OF PROCEEDINGS - REARRAIGNMENT
         BEFORE THE HONORABLE PETER J. MESSITTE
9           UNITED STATES DISTRICT JUDGE
         THURSDAY, JULY 8, 2021; 11:08 A.M.
10            GREENBELT, MARYLAND

11           A P P E A R A N C E S

12  FOR THE PLAINTIFF:

13     OFFICE OF THE UNITED STATES ATTORNEY
          BY:  KELLY O'CONNELL HAYES, ESQUIRE
14          6406 IVY LANE, SUITE 800
          GREENBELT, MARYLAND 20770
15          (301) 344-0041

16  FOR THE DEFENDANT:

17     OFFICE OF THE FEDERAL PUBLIC DEFENDER
          BY:  ELIZABETH GENEVIEVE OYER, ESQUIRE
18          100 S. CHARLES STREET, SUITE 900, TOWER II
          BALTIMORE, MARYLAND 21201
19          (410) 962-3962

20

21     ***Proceedings Recorded by Audio Recording***
     Transcript Produced By Computer-Aided Transcription
22 _____

23         MARLENE KERR, RPR, RMR, CRR, FCRR
         FEDERAL OFFICIAL COURT REPORTER
24         6500 CHERRYWOOD LANE, STE 200
         GREENBELT, MARYLAND 20770
25           (301)344-3499

1          P R O C E E D I N G S

2      (Call to Order of the Court.)

3          THE LAW CLERK:  All rise.

4      The United States District Court for the District of

5  Maryland is now in session, the Honorable Peter J. Messitte

6  presiding.

7          THE COURT:  All right, ladies and gentlemen, have a

8  seat, please.

9      All right, Mr. Clerk.

10          THE COURTROOM DEPUTY:  The matter now pending before

11  the Court is criminal action number PJM-19-121, the United

12  States of America vs. Ricardo Carter, II.  The matter comes

13  before this Court for a rearraignment.

14          THE COURT:  Counsel, identify yourselves for the

15  government and then defendant.

16          MS. HAYES:  Good morning, Your Honor.  Kelly Hayes on

17  behalf of the United States.

18          MS. OYER:  Good morning, Your Honor.  Liz Oyer for

19  Mr. Carter who is present to my right.

20          THE COURT:  All right.

21      Counsel, if everyone has been vaccinated, I have no

22  objection to your taking your masks off; and I have been so and

23  I will.  It's a different story if we get to a trial with a

24  jury but for now, very good.

25      Okay.  We're here for a rearraignment and guilty plea so

1    if you'll swear the defendant, please, Mr. Clerk.

2              THE COURTROOM DEPUTY:  Please raise your right hand.

3         You do solemnly rear and affirm under the penalties of

4    perjury that the information you're about to give to the Court

5    in the matter now pending before the Court shall be the truth,

6    the whole truth, and nothing but the truth?

7              THE DEFENDANT:  I do.

8              THE COURTROOM DEPUTY:  Thank you.  Please state your

9    full name for the record.

10             THE DEFENDANT:  Ricardo Tyrone Carter, II.

11             THE COURTROOM DEPUTY:  Thank you.

12   BY THE COURT:

13   Q.   Have a seat.  Pull that microphone close to you so I can

14   hear your answers.

15        How old are you, sir?

16   A.   37, Your Honor.

17   Q.   And what -- have you been in custody since when,

18   approximately?

19   A.   I believe April 24th.

20   Q.   Okay.  You were serving a sentence while in Virginia

21   prior?

22   A.   Yes, Your Honor.

23   Q.   All right.  Where were you residing in the interim?  I

24   gather you were arrested in Florida, which is another issue in

25   the case, but did you ever have a residence in Maryland between

1  the time you completed your Virginia sentence and the time you

2  were taken into custody here?

3  A.   Yes, Your Honor.

4  Q.   Where was that?

5  A.   In Lombard, Maryland.

6  Q.   All right.  And was it an apartment?  A house?

7  A.   Apartment.

8  Q.   Whose apartment?

9  A.   Mine.

10  Q.   In your name?

11  A.   When I first moved, Your Honor, yes, and then I switched

12  residences.

13  Q.   All right.  Are you married?  Single?

14  A.   I'm single, Your Honor.

15  Q.   All right.  Do you have any children?

16  A.   Yes, Your Honor.

17  Q.   Where are they?

18  A.   They are in Maryland as well.

19  Q.   Okay.  Are any of them under 18?

20  A.   All four of my children are under 18.

21  Q.   Are they with the same mother?

22  A.   No, Your Honor.

23  Q.   Are they with their mothers then?

24  A.   Yes, three and one.

25  Q.   All right.  How far did you go in school?

1  A.    I finished high school.

2  Q.    What's the last employment you had?

3  A.    Last employment I had was at Presidential Towers

4  Condominiums.

5  Q.    When was that?

6  A.    That was right before I was arrested.  My last day working

7  was right around the end -- the last week of March.

8  Q.    Of this year?

9  A.    Yes.

10  Q.    All right.

11        Are you under the influence of any alcohol or drugs at

12  this time?

13  A.    No, Your Honor.

14  Q.    Are you under the care of any psychiatrist, psychologist,

15  or mental health professional?

16  A.    No, Your Honor.

17  Q.    Now, Mr. Carter, you have been charged in an indictment

18  with the one count of bank fraud and the second count of

19  aggravated identity theft.  Do you understand that?

20  A.    Yes, Your Honor.

21  Q.    Have you seen the indictment that charges you with those

22  offenses?

23  A.    Yes, Your Honor.

24  Q.    And have you gone over that with your attorney?

25  A.    Yes, Your Honor.

```
1   Q.    And you told her all you know about the case?

2   A.    Yes, Your Honor.

3   Q.    All right.

4         Now, when you are charged in a case such as this, you have

5   to enter some sort of plea; not guilty, guilty, no contest,

6   whatever.  Do you understand that?

7   A.    Yes, Your Honor.

8   Q.    And I understand that you have reached an agreement with

9   the government relative to your plea.  Is that also correct?

10  A.    That's correct, Your Honor.

11  Q.    All right.

12            THE COURT:  Now, I want to be clear that before we

13  talk through the agreement that, Ms. Oyer, you're satisfied

14  that any *Brady* obligations have been complied with by the

15  government, and you are?

16            MS. OYER:  I have no reason to believe that the

17  government has not --

18            THE COURT:  You have what?

19            MS. OYER:  I have no reason to believe that the

20  government has not complied with its *Brady* obligation.

21            THE COURT:  Very well.

22        Are you satisfied, Ms. Hayes, that you've made full

23  disclosure?

24            MS. HAYES:  We have, Your Honor.

25            THE COURT:  All right, very well.
```

1    BY THE COURT:

2    Q.   Now, I asked you whether you have told your attorney

3    everything about the charges against you in this case, and you

4    answered that you have.  Is that right?

5    A.   Yes, Your Honor.

6    Q.   And she's had a chance to explain the charges to you?

7    A.   Yes, Your Honor.

8    Q.   All right.

9         Now, what I have in front of me is a letter addressed to

10   Ms. Oyer.  It is dated May 27, 2021.  It consists of 14 pages,

11   which includes three pages of stipulation of facts.  Any

12   supplement to that would be sealed.  But in any event, do you

13   have a copy of that document in front of you; that is, the plea

14   agreement?

15   A.   Yes, Your Honor, I do.

16   Q.   Is that your signature that appears on page 10 with the

17   date 6-2-21 to the left, Ricardo Carter?

18   A.   Yes, Your Honor.  I got -- I authorized my lawyer to sign

19   electronically for me.

20   Q.   You had your lawyer sign?

21   A.   Electronically, yes, because it was -- we did --

22   Q.   I'm having a little trouble hearing you.  Have you been

23   vaccinated?

24   A.   No, I have not.

25   Q.   All right.  Keep your mask on.

```
 1   A.    I authorized Ms. Oyer to electronically sign it for me,
 2   Your Honor, because we went --
 3   Q.    Well, at any rate, have you seen that document before?
 4   A.    Yes, I have, Your Honor.
 5   Q.    Have you gone over it with Ms. Oyer?
 6   A.    Yes, Your Honor.
 7   Q.    Has she explained it to you?
 8   A.    Yes, Your Honor.
 9         THE COURT:  Is there any problem with him affixing
10   his original signature to the agreement at this time, Ms. Oyer?
11         MS. OYER:  No problem with that, Your Honor.
12         THE COURT:  All right.
13      And Counsel for the government, same?
14         MS. HAYES:  Yes.  No objection, Your Honor.
15         THE COURT:  All right.
16   BY THE COURT:
17   Q.    Well, let me go over it now.  It's ten pages of agreement.
18   There are three pages of Statement of Facts and also signature
19   lines for Ricardo Carter there.  Have you had that agreement
20   explained to you?
21   A.    Yes, Your Honor.
22   Q.    All right.  Have you had a chance to ask Ms. Oyer
23   questions about it?
24   A.    Yes, Your Honor.
25   Q.    All right.
```

1    Now, I understand that there are two counts pending

2 against you, one is for bank fraud and the other for aggravated

3 identity theft.  And what is the plea that you're going to

4 enter with respect to those charges?

5 A.   Your Honor, I'm going to take responsibility and plead

6 guilty.

7 Q.   All right.

8    What I'm going to do is have Ms. Hayes for the government

9 recite what the basic terms of the agreement are and then after

10 I'm going to ask you whether that's your understanding of what

11 you've agreed to.  So please pay careful --

12         THE COURT:  All right, Ms. Hayes.

13         MS. HAYES:  Thank you, Your Honor.

14    In paragraph one, the offense of conviction for the two

15 offenses that the defendant has agreed to plead guilty to are

16 Count One, which is bank fraud, in violation of 18 U.S.C. 1344

17 and Count Two, which is aggravated identity theft, in violation

18 of 18 U.S.C. 1028(A).

19    Paragraph two under the title "Elements of the Offenses"

20 does just that, lists the elements of the offenses that the

21 government would be required to prove beyond a reasonable doubt

22 if the defendant had elected to go to trial.  Those elements

23 for Count One, bank fraud, are, one, there was a scheme or

24 artifice to obtain money or funds owned or under the custody or

25 control of a financial institution; two, the defendant executed

1    or attempted to execute the scheme by means of materially false

2    or fraudulent pretenses or promises as charged in the

3    indictment; and at the time of the execution of the scheme, the

4    financial institution had its deposits insured by the Federal

5    Deposit Insurance Corporation for the National Credit Union

6    Share Insurance Fund.

7        The elements for Count Two, aggravated identity theft, are

8    that, one, the defendant knowingly possessed, transferred, or

9    used a means of identification of another person and knew that

10    the means of identification belonged to another person; two,

11    the defendant did so without lawful authority; and three, the

12    possession or use of the means of identification was during and

13    in relation to a violation that was set forth by statute.  And

14    in this case, specifically bank fraud in violation of 18 U.S.C.

15    1344.

16        The agreement thereafter sets forth the penalties for both

17    counts.  The maximum penalties provided by statute for Count

18    One, bank fraud, is a maximum of 30 years imprisonment followed

19    by a maximum of 5 years of supervised release, and/or a maximum

20    fine of $1 million, and a $100 special assessment.

21        The maximum and mandatory minimum terms of imprisonment

22    for Count Two are two years, and specifically that is two years

23    consecutive to any term of imprisonment imposed on top of the

24    bank fraud conviction.  The maximum supervised release for the

25    aggravated identity theft is up to one year, and a maximum fine

1    of $250,000, as well as a mandatory special assessment of $100.

2         The agreement thereafter defines certain of these terms,

3    including prison, which states that it will be within the

4    Bureau of Prison's sole discretion to designate the institution

5    where Mr. Carter will serve.  Supervised release is that if the

6    Court orders a term of supervised release and the defendant

7    violates any of the conditions of his release, the Court may

8    order the defendant returned to custody to serve a term of

9    imprisonment as permitted by statute followed possibly by an

10   additional term of supervised release.

11        It also discusses restitution and that the Court may order

12   the defendant to pay restitution, and if a fine of restitution

13   is imposed, it shall be payable immediately unless ordered

14   otherwise by the Court, and the defendant may be required to

15   pay interest if the fine is not paid when due.  It also sets

16   forth that the Court may enter an order of forfeiture of assets

17   directly traceable to the offense, substitute assets, and/or a

18   money judgment equal to the value of the property subject to

19   forfeiture.

20        THE COURT:  And I understand the level of the

21   forfeiture is $119,733.94.  Is that correct?

22        MS. HAYES:  Yes, at least $119,733.94; that's

23   correct.

24        THE COURT:  All right.

25        MS. HAYES:  And for the record, that's set forth in

1   paragraph 12 of the plea agreement.

2       The Subsection F of paragraph 3 also talks about if the

3   Court imposes a fine or restitution, my office, the U.S.

4   Attorneys Office will -- their Financial Litigation Unit will

5   be responsible for collecting the debt; and the defendant

6   agrees to various conditions related to a schedule of payment,

7   as well as various other agreements to complete and sign forms

8   to assist with the collection of obligations.

9       Your Honor, my understanding is that you will go through

10  the waiver of rights with the defendant.

11          THE COURT:  Right.

12          MS. HAYES:  Then I will -- paragraph 4 discusses the

13  rights that the defendant is entering into pursuant to the

14  agreement, which the Court will further discuss.

15      Turning them to paragraph 5, it sets forth that the

16  advisory sentencing guidelines apply and that the Court must

17  first calculate the advisory guidelines range and then will

18  take into account all of the other factors set forth in the

19  Sentencing Reform Act in order to establish a reasonable

20  sentence.

21      The parties thereafter agree that certain advisory

22  guidelines apply based on the Statement of Facts that are set

23  forth in Attachment A.  Going through those in Count One, bank

24  fraud, the parties agree that the applicable base offense level

25  is seven, followed by an eight level increase because the loss

1   is more than $95,000 but not more than $150,000.  An additional

2   two level increase applies because the offense involved ten or

3   more victims.  An additional two level increase applies because

4   the offense involved sophisticated means, and the defendant

5   intentionally engaged in or caused the conduct constituting

6   sophisticated means.

7        A two level -- an additional two level increase applies

8   because the defendant abused a position of private trust and

9   another two level increase applies because the defendant

10  willfully obstructed or impeded or attempted to obstruct or

11  impede the administration of justice with respect to the

12  investigation, prosecution, or sentencing of the instant

13  offense of conviction, and the obstructive conduct related to

14  the defendant's offense of conviction and any relevant conduct.

15       The final paragraph of this section for Count Two -- or

16  Count One, excuse me, states that the office will not oppose a

17  two level reduction in the defendant's offense level based on

18  his prompt recognition and affirmative acceptance of personal

19  responsibility and that the defendant -- or that the government

20  agrees to an additional one level decrease in recognition of

21  the defendant's timely notification.

22       There are a variety of reasons why the office may oppose

23  any adjustment for acceptance or may decline to make a motion

24  for the third level, including if the defendant fails to admit

25  each and every item in the factual stipulation, denies

1  involvement in the offense, gives conflicting statements about

2  his involvement in the offense, is untruthful to the Court, the

3  government, or the United States Probation Office, obstructs or

4  attempts to obstruct justice prior to sentencing, engages in

5  any criminal conduct between the date of the agreement and the

6  date of sentencing, attempts to withdraw his plea of guilty or

7  violates the agreement in any way.

8       Count Two continues, setting forth the applicable

9  guidelines range, which is that the Court must impose a

10  sentence of two years of imprisonment consecutive to any term

11  of imprisonment imposed for Count One.

12      And then it says the office -- and I believe, Your Honor,

13  in looking at this now and I think from our discussions with

14  Ms. Oyer previously, I believe that Subparagraph (g) of Count

15  One should actually be omitted; and, in fact, the applicable

16  paragraph is misput in there as Subparagraph A and, in fact,

17  should be the (g) there.  And the difference, Your Honor, being

18  that the government -- and I paused on this when I was saying

19  it originally.  The government had originally agreed to a two

20  level reduction for the apparent and prompt recognition of his

21  acceptance of responsibility, but the office will not make a

22  motion for the third level pursuant to his acceptance of

23  responsibility.

24      THE COURT:  Well, what is the final level that you

25  end up with?  I see -- I thought it was -- it looks like 21 but

1    I also thought it might be 20.  What do you end up with?

2          MS. HAYES:  Your Honor, let me ask for the Court's

3    indulgence.

4          THE COURT:  And I need to understand exactly what you

5    say.  What about 8(g)?  You said that should not be there at

6    all or --

7          MS. HAYES:  Correct, Your Honor.  And I apologize.

8    I'm seeing this now.  So I believe that (g) should be omitted

9    entirely.  And then in Count Two, after the Court must impose a

10   sentence of two years, there is one that's labeled Subparagraph

11   (a).  That should be labeled (g) in error -- or (i) I suppose

12   it should be, following (h), and that specific paragraph is the

13   applicable paragraph, which says that the government will not

14   make the third level -- the motion for the third level pursuant

15   to U.S.S.G. 3E1.1(b) because the defendant did not timely

16   notify --

17         THE COURT:  Well, are you telling me this or is that

18   in the agreement now?

19         MS. HAYES:  That's an agreement, Your Honor, starting

20   at--

21         THE COURT:  Where is it -- wait one second.

22         MS. HAYES:  Starting at the bottom of paragraph -- of

23   page 5 to the top of paragraph 6, Your Honor.

24         THE COURT:  Well, not -- all right, I see.  For

25   additional.  Very well.

1          MS. OYER:  Your Honor, my understanding is that

2     that's as to Count Two, but as to Count One, the government

3     expressly agrees in the plea agreement that we've signed that

4     they will make a motion for a third level for acceptance of

5     responsibility.  So the way I calculate it, the final offense

6     level for Count One is 20, and the offense level for the

7     aggravated identity theft is really just the two years.

8          So the guidelines are not very --

9          THE COURT:  Well, all right.  You're making changes

10     on a document that I have to ratify at this point, and you're

11     telling me something is in, something is out, something has

12     changed.  I need to know as you go along specifically what you

13     agree is in and what you agree is out, and you have to initial

14     the document that makes all of these changes.

15          Now, right now -- and maybe you disagree, Ms. Oyer, or

16     tell me otherwise.  On page 5 of the agreement you say that

17     number (g), sub (g) does not apply at all.  It should be

18     omitted.  Correct or not correct?

19          MS. OYER:  Not correct, Your Honor.

20          THE COURT:  Not correct?

21          MS. HAYES:  Your Honor, may I have --

22          THE COURT:  Sorry.  One at a time.  Try again.

23          MS. OYER:  I'm not sure what the basis is for

24     Ms. Hayes' position that this paragraph, which is part of the

25     signed agreement, should not be in the agreement.

1        THE COURT:  You don't know why she's saying it

2  shouldn't be in the agreement?

3        MS. HAYES:  Your Honor, may I have a moment to speak

4  with Ms. Oyer privately?

5        THE COURT:  Yeah, I mean, let's get it cleared up if

6  we can.

7     (Brief pause.)

8        THE COURT:  Okay, look, folks.  I don't need you to

9  negotiate this on the fly.  If there's any disagreement, you're

10 going to have to go back.  We can reconvene later today.  Get

11 the document in proper order so that you agree on the number or

12 you don't agree on the number.

13    Right now I hear you say, Ms. Oyer -- either you don't

14 agree that 21 is the number or you want to be able to argue for

15 20.  What's your position on that?

16       MS. OYER:  Your Honor, my position is that the plea

17 agreement as the government sent it is the agreement that the

18 Court should enforce.

19       THE COURT:  That what?

20       MS. OYER:  That the Court should enforce the

21 agreement as it was written and presented to me and my client,

22 which --

23       THE COURT:  Well, that's not what I have before me is

24 what you're telling me, or is it?  I don't know.

25       MS. OYER:  Your Honor, yes.  Subparagraph (g) on page

1   5 states -- the second sentence states, "This office agrees to

2   make a motion pursuant to Section 3E1.1(b) for an additional

3   one level decrease in recognition of the defendant's timely

4   notification."  The defendant's intention is to enter a plea of

5   guilty.

6           THE COURT:  All right.  In any event, you say (g)

7   should stand as it is?

8           MS. OYER:  Yes, Your Honor.

9           THE COURT:  It should not be taken out.

10      Your position, Ms. Hayes?

11          MS. HAYES:  Your Honor, I believe that this is a

12  drafting issue.  I understand that it has now been signed.  I

13  was hoping that Ms. Oyer would understand that in our prior

14  communications -- it simply doesn't make sense that we would be

15  making a three level motion for Count One but not Count Two,

16  which -- only a two level as to Count Two, which the guidelines

17  are simply that there was only a two level -- excuse me, a

18  two-year mandatory minimum.  I also note that the appeal waiver

19  is related to only having a two level motion for acceptance of

20  responsibility.

21      So, Your Honor, I am frustrated because I believe it's a

22  typographical error.  That said, it was the plea agreement that

23  went over to Ms. Oyer, and so the government -- and it is

24  signed.  So the government will stick with it as is, and we can

25  address it at sentencing.

1          THE COURT:  Where do we end up then?  I'm still not

2    sure whether it's a 21 or 20.

3          MS. HAYES:  Your Honor, for Count One, apparently, it

4    is a 20.  And plus, Count Two would be a consecutive two years

5    and only would be a two level motion for departure, which

6    doesn't make sense.  That's my point to Ms. Oyer that I was

7    hoping that we could resolve.  That said, the appellate waiver

8    is related to a 21.  So we can address the issue related to the

9    additional motion pursuant to -- I think at sentencing, and

10   we'll enter the agreement as is.

11         THE COURT:  Well, where do you say we come out,

12   Ms. Oyer?  I'm still -- I need some clarification.

13         MS. OYER:  Your Honor, I believe that as to Count

14   One, the final offense level is 20; and for Count Two, the

15   offense level is really just a consecutive 24 months to

16   whatever level 20 turns out to be in light of Mr. Carter's

17   criminal history.

18         THE COURT:  All right.

19      And you're prepared to abide by that interpretation,

20   Ms. Hayes?  I mean, I know you say it's illogical but either

21   you have an agreement or you don't, and I'm not forcing you to

22   say you agree at the moment, but I've got to get some

23   clarification on where you are.

24      If you want to go back and try to sort it out -- you have

25   a signed document, whatever it means.  I mean, everybody seems

1   to have signed this document however you read it.  If you -- I

2   guess if you add up the numbers under five, on page five, you

3   get 7, 8, 15, 17, 19, 21, 23, less 2; you get 21 by my

4   calculation at the first part.  Does that sound right?

5           MS. OYER:  21 and then the agreement also states that

6   the government will move for an additional one level reduction.

7   That's the second sentence.

8           THE COURT:  Will move?  Where does it say that?  In

9   (g)?

10          MS. OYER:  In (g), paragraph 2.

11          THE COURT:  (G)?

12          MS. OYER:  I'm sorry.  In (g), sentence 2, the second

13  sentence in (g).

14          THE COURT:  All right.  That's right.  So that would

15  take it down to 20 by that calculation.

16          MS. OYER:  Yes, Your Honor.

17          THE COURT:  What -- do you know what his approximate

18  criminal history is?  Is he a four?

19          MS. OYER:  I don't know off the top of my head, Your

20  Honor.  I think possibly a three.  I'm not sure at this point.

21          THE COURT:  Do you have my book, guidelines book

22  here?  Well, let's see.  Assuming he's at 20, a Category 3 is

23  41 to 51 months; Category 4 is 51 to 63 months.  That would be

24  the range.  Plus 24 consecutive.

25          MS. OYER:  That's right, Your Honor.

1          THE COURT:  Is that where you are, Ms. Hayes?

2          MS. HAYES:  No, Your Honor.  My position is this was

3    a typographical error.  Ms. Oyer knew this was a typographical

4    error in the plea agreement and that (g) should be omitted.

5        In our discussions prior to this plea agreement that --

6    would be that we would not be making a motion.  The government

7    is in a tough place because it has now been extended and

8    Mr. Carter has signed, but my understanding with my

9    conversations with Ms. Oyer is that we were all on the same

10   page, that it was only a two level reduction.  That's also

11   consistent with the appellate waiver that applies to an offense

12   level of 21 as to Count One.

13          THE COURT:  All right.  Show me that language in

14   the --

15          MS. HAYES:  It's under the waiver of appeal, page 7,

16   Subparagraph (b)1 and 2.  It relates to an appeal waiver

17   related to 21 on Count One, which would be consistent with the

18   government only seeking to make a two level reduction.  And

19   so --

20          THE COURT:  What do you do with that language,

21   Ms. Oyer?  How do you contend that that language on page 7 be

22   one?  Why would it refer to an offense level of 21 when you say

23   the offense level should be 20?

24          MS. OYER:  I don't know, Your Honor.  I did not draft

25   this agreement.  I presented it to Mr. Carter as it was

1  written.

2      MS. HAYES:  And the error was not brought to my

3  attention prior to right now.

4      MS. OYER:  But Ms. Hayes was the drafter of the

5  document.  So I don't know what her thinking was.

6      THE COURT:  Look, I'm just assumed -- prepared to

7  suspend the proceedings.  You go back.  I'll assume that there

8  is no deal at all, and if you want to renegotiate, fine.  I'm

9  not going to try to hold one party to what looks like an

10  obvious inconsistency.  It looks like at least in one part of

11  the agreement 21 appears to be what the parties have in mind,

12  and in another paragraph, 20 appears to be what the parties

13  have in mind.  And I don't know -- the difference is based on

14  the -- I guess the -- let me just go back to the guidelines.

15      I was looking in terms of criminal history what a 20,

16  Category 3 is; 41 to 51; Category 4, 57 to 71; a 21 offense

17  level is 46 to 57 for a Category 3; 57 to 71 for a Category 4.

18      So, you know, I mean, I'm not going to push you, Ms. Oyer,

19  to agree or Ms. Hayes to say otherwise, but I'm not going to

20  push -- as I say, I can't make you raise an appealable issue on

21  this.  You have to deal or you don't.

22      MS. OYER:  Well, Your Honor, Mr. Carter has proffered

23  his plea of guilty to both offenses, and I am prepared to

24  proceed with his guilty plea.  He's prepared to proceed with

25  his guilty plea to the charges in the indictment.

1          THE COURT:  Well, how can you do that if you don't

2  have an agreement on the terms?  What is he pleading guilty to?

3          MS. OYER:  To the two counts in the indictment, Your

4  Honor.  Mr. Carter is prepared to plea to the indictment as it

5  stands.

6          THE COURT:  With no agreement?

7          MS. OYER:  With no agreement.  He will stipulate to

8  the facts that are outlined here, but he's prepared to proceed

9  with his guilty plea and would like to proceed with his guilty

10  plea today.

11          THE COURT:  Ms. Hayes?

12          MS. HAYES:  Your Honor, if the defendant wants to

13  stipulate using Attachment A, the Statement of Facts, and will

14  continue to waive additional rights, then I don't think the

15  government will have any objections.

16          THE COURT:  There won't be any waivers at all.  He's

17  just pleading straight up as I understand it.  Right?

18          MS. OYER:  He would be pleading straight up to the

19  indictment, Your Honor, and he, of course, as part of that

20  decision, waives his right to appeal his guilty plea, his

21  conviction on those two counts, and he will waive the rights

22  that are outline here in this agreement.

23          THE COURT:  That's usually not the way it works.  I

24  mean, there are all sorts of rights that one waives when one

25  pleads guilty, and you're saying he waives all those rights,

1 | too?  Have you talked to him about this?  You know, we're sort

2 | of on the fly here.  It's a little troublesome.

3 | 　　　　　MS. OYER:  Your Honor, Mr. Carter is prepared to go

4 | through an ordinary guilty plea colloquy and plead guilty to

5 | the two counts in the indictment and waive all of his rights to

6 | go to trial and further proceedings, et cetera.  He would, with

7 | a plea like that, retain his right to appeal his sentence in

8 | this case, but he's willing to waive his right to further trial

9 | court proceedings and to plead guilty to the two counts in the

10 | indictment based on the Statement of Facts that is attached to

11 | the plea agreement.

12 | 　　　　　THE COURT:  Ms. Hayes?

13 | 　　　　　MS. HAYES:  Your Honor, we had those discussions

14 | prior, and had the government intended that he would plea open,

15 | the government had intended to seek a Superseding Indictment

16 | related to --

17 | 　　　　　THE COURT:  Well, you're free to do that.  I mean, if

18 | you want to -- at this point if you want leave to file a

19 | superseding, I'll give you leave to do that.  I'm just not

20 | going to push this case one way or another.

21 | 　　　If he's prepared -- if this is a situation where the

22 | defendant says I'm prepared to plead and the government says,

23 | well, you may be but we're going to enter a Superseding

24 | Indictment and that's -- I'm going to give them leave to do

25 | that.  That's what you're faced with, Ms. Oyer.  I mean, it's

1   sort of a gamesmanship going on here that I don't want to be

2   part of.  Either you've got an agreement or you don't.  And if

3   the government wants to go forward and say we would like not to

4   go forward on a plea at this time, we would like to supersede,

5   they're entitled to do that.

6       Look, I mean, all of this said, I feel like we're trying

7   to negotiate a deal on the fly here and I don't want to do

8   that.  I don't think it's fair to your client, frankly.

9           MS. OYER:  Your Honor, I have spoken extensively with

10  Mr. Carter about his decision to plead guilty.  He is having a

11  very difficult time in the pretrial detention facility.  He

12  wants to resolve this matter as expeditiously as possible and

13  we're here today.

14          THE COURT:  Well, that's fine, but right now, right

15  now I'm not going to try and lock one side or the other into an

16  agreement, the terms of which are, frankly, conflicting.  I'm

17  just not going to do it.

18      So right now I'm going to suspend any further statement in

19  the matter.  I mean, if he wants to plead guilty to facts, I

20  guess I can let him do that, and then it would make any kind of

21  return easier, but it's not going to end a Superseding

22  Indictment.  There's going to be another count, presumably,

23  that's going to come in and he's going to have to deal with

24  that.

25          MS. OYER:  Your Honor, I stated to Ms. Hayes I don't

1   know what additional counts there is even a factual basis for

2   her to pursue.

3           THE COURT:  Well, that's why I can't decide that now,

4   though.

5           MS. OYER:  Mr. Carter is prepared to enter his plea

6   of guilty to the two counts in the indictment today.

7           THE COURT:  Candidly, I'm just not sure why we're in

8   this quarrel.  I mean, we're talking a matter of months unless

9   the Court goes to the maximum of the guidelines with a

10  differential.  You're talking about maybe six months

11  differential here.  I don't think -- I haven't done the exact

12  calculation but that's what we're talking about, 21 versus 20;

13  but if that's the situation and the government wants to go

14  forward with the superseding, I'll permit it.

15      So that said, I'm going to suspend the proceedings at this

16  point.  You come back to me if you're ready to cut a cleaner

17  deal, but right now because of the ambiguity, the conflict,

18  frankly, in the signed agreement, I'm not going to go forward

19  with it, and I'm not going to negotiate terms or have you

20  negotiate terms in open court while your client is sitting

21  there.  I don't know whether he follows what we've been talking

22  about or not, but you'll certainly want to explore that with

23  him.

24      So that said, the Court suspends the proceedings.  You can

25  advise the Court at some point hereafter how you're going to

1    go, Ms. Hayes.  Either you're going to supersede, which you

2    should do promptly, or you renegotiate your deal and come back

3    with a clean document.

4          All right, we're adjourned.

5                THE LAW CLERK:  All rise.

6                THE COURTROOM DEPUTY:  This Honorable Court now

7    stands in recess.

8          (Recess taken, 11:41 A.M.)

9

10         I, Marlene Kerr, certify that the foregoing is a true,

11   correct, and complete transcript of the audio-recorded

12   proceedings in the above-entitled matter, audio recorded via

13   FTR Gold on July 8, 2021, and transcribed from the audio

14   recording to the best of my ability, and that said transcript

15   has been compared with the audio recording.

16

17                          Dated this 7th day of March, 2022.

18
                                          /s/
19                          Marlene Kerr, RPR, RMR, CRR, FCRR
                            Federal Official Court Reporter
20

21

22

23

24

25